Case 4:15-cv-00283   Document 21   Filed in TXSD on 01/27/16   Page 1 of 14

United States District Court
Southern District of Texas
**ENTERED**
January 27, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ALBERT BOUDREAUX III, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-15-0283 |
| | § | |
| SHERIFF TROY E. NEHLS, | § | |
| et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

The plaintiff, Albert Boudreaux III (Inmate No. 00182409), has filed a Complaint Under 42 U.S.C. § 1983, Civil Rights Act ("Complaint"), alleging violations of his civil rights at the Fort Bend County Jail. The court requested an answer from two defendants, Corporal Edwin Williams and Deputy Diego Leal, Jr. (Order for Service of Process, Docket Entry No. 11). These defendants have filed a Motion for Summary Judgment ("MSJ") (Docket Entry No. 19), arguing that this case should be dismissed. Boudreaux has not filed a response and his time to do so has expired. After considering all of the pleadings, the exhibits, and the applicable law, the court will grant the Defendants' Motion and will dismiss this case for the reasons explained below.

### I. Background

At the time the Complaint was filed, Boudreaux was in the custody of the Fort Bend County Sheriff's Department at the

Fort Bend County Jail (the "Jail") as a pretrial detainee.[1] The defendants, Corporal Edwin Williams and Deputy Diego Leal, Jr., were employed by the Fort Bend County Sheriff's Department at the Jail.[2]

On July 18, 2014, Boudreaux was moved from a "step down unit for mental health offenders" at the Jail and placed in cell block 2-A.[3] On October 17, 2014, there was a fight involving two inmates in the 2-A cell block.[4] Corporal Williams investigated the fight, questioning Boudreaux and other inmates who were present in an attempt to identify the aggressor.[5] None of the inmates who were questioned would provide any information about the fight.[6] Subsequently, Boudreaux was moved from the 2-A cell block to the 2-H cell block at the Jail.[7]

---

[1] Complaint, Docket Entry No. 1, p. 3; Plaintiff's More Definite Statement ("More Definite Statement"), Docket Entry No. 10, p. 3. Boudreaux has been released and is no longer in custody. Change of Address, Docket Entry No. 20.

[2] Defendants' Original Answer, Docket Entry No. 18, p. 1. Deputy Leal is now retired. Affidavit of Diego Leal, Jr. ("Leal Affidavit"), Exhibit C to MSJ, Docket Entry No. 19-3, p. 2.

[3] More Definite Statement, Docket Entry No. 10, p. 9; Classification Record, Exhibit A to MSJ, Docket Entry No. 19-1, p. 11.

[4] Affidavit of Edwin Williams ("Williams Affidavit"), Exhibit B to MSJ, Docket Entry No. 19-2, p. 3.

[5] Id.

[6] Id.

[7] Affidavit of Kim Pokluda ("Pokluda Affidavit"), Exhibit A to MSJ, Docket Entry No. 19-1, p. 3.

On November 5, 2014, Boudreaux was attacked by three offenders in the 2-H cell block.[8] The assault took place after the evening meal was served, during a period of time when the cell doors are unlocked to allow inmates access to the TV area and showers.[9] Boudreaux sustained a broken jaw that required oral surgery as a result of the assault.[10]

Boudreaux contends that Corporal Williams retaliated against him by transferring him to cell block 2-H, which Boudreaux describes as a "trouble dorm," because Boudreaux would not give Williams information about the fight that occurred between two other offenders on October 17.[11] Boudreaux also contends that Deputy Leal failed to protect him from harm when he was assaulted in the 2-H cell block on November 5, 2014, because Leal left the door to his cell open and left his post for an extended period of time.[12] Boudreaux seeks $150,000.00 in compensatory damages for the violation of his civil rights.[13]

The defendants deny violating Boudreaux's constitutional rights and move for summary judgment, arguing that they are

---

[8]Statement of Facts, attached to Complaint, Docket Entry No. 1-1, p. 2.

[9]Leal Affidavit, Exhibit C to MSJ, Docket Entry No. 19-3, pp. 4, 5.

[10]More Definite Statement, Docket Entry No. 10, pp. 2, 6.

[11]Correction of Statement of Facts, Docket Entry No. 16, p. 1.

[12]More Definite Statement, Docket Entry No. 10, p. 1.

[13]Complaint, Docket Entry No. 1, p. 4.

entitled to qualified immunity from Boudreaux's claims against them in their individual capacities.[14] The defendants argue further that Boudreaux fails to establish liability against them in their official capacities.[15]

## II. Standard of Review

The Defendants' Motion for Summary Judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. Under this rule, a reviewing court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986). A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2510 (1986). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. Id.

In deciding a summary judgment motion, the reviewing court must "construe all facts and inferences in the light most favorable to the nonmoving party." Dillon v. Rogers, 596 F.3d 260, 266 (5th Cir. 2010) (internal citation and quotation marks omitted). However, the non-movant cannot avoid summary judgment simply by

---

[14]MSJ, Docket Entry No. 19, pp. 7-9.

[15]Id. at 15.

presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." Jones v. Lowndes County, Mississippi, 678 F.3d 344, 348 (5th Cir. 2012) (quoting TIG Ins. Co. v. Sedgwick James of Washington, 276 F.3d 754, 759 (5th Cir. 2002)); see also Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (a non-movant cannot demonstrate a genuine issue of material fact with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence). If the movant demonstrates the absence of a genuine issue of material fact, the burden shifts to the non-movant to provide "specific facts showing the existence of a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986).

As noted above, the plaintiff has not filed a response to the MSJ. Notwithstanding the plaintiff's failure to respond, summary judgment may not be awarded by default "simply because there is no opposition, even if the failure to oppose violated a local rule." Hibernia Nat'l Bank v. Administracion Central Sociedad Anonima, 776 F.2d 1277, 1279 (5th Cir. 1985). "However, a court may grant an unopposed summary judgment motion if the undisputed facts show that the movant is entitled to judgment as a matter of law." Day v. Wells Fargo Bank Nat'l Ass'n, 768 F.3d 435, 435 (5th Cir. 2014) (citation omitted); see also Eversley v. MBank Dallas, 843 F.2d 172, 174 (5th Cir. 1988).

III. **Discussion**

A. Qualified Immunity

Public officials acting within the scope of their authority generally are shielded from civil liability by the doctrine of qualified immunity. See Harlow v. Fitzgerald, 102 S. Ct. 2727, 2738 (1982). "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." Taylor v. Barkes, 135 S. Ct. 2042, 2044 (2015) (quoting Reichle v. Howards, 132 S. Ct. 2088, 2093 (2012)). In doing so, "[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2085 (2011). Thus, the doctrine of qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." Id. (quoting Malley v. Briggs, 106 S. Ct. 1092, 1096 (1986)).

To determine whether a public official is entitled to qualified immunity for an alleged constitutional violation, reviewing courts engage in a two-prong inquiry. See Pearson v. Callahan, 129 S. Ct. 808, 815 (2009). The first prong of the analysis asks whether, taken in the light most favorable to the party asserting the injury, the facts alleged show that the official's conduct violated a constitutional right that was "clearly established" at that time. Id. at 815-16. The second prong of the analysis asks whether qualified immunity is

appropriate, notwithstanding an alleged violation, because the defendant's actions were objectively reasonable "in light of clearly established law at the time of the conduct in question." Hampton Company National Surety, LLC v. Tunica County, Mississippi, 543 F.3d 221, 225 (5th Cir. 2008) (quoting Freeman v. Gore, 483 F.3d 404, 410-11 (5th Cir. 2007)). A reviewing court may consider these prongs in any sequence. See Pearson, 129 S. Ct. at 818; see also Tolan v. Cotton, 134 S. Ct. 1861, 1866 (2014). In this instance the court begins and ends its qualified immunity analysis with the first prong because Boudreaux does not demonstrate that either defendant violated the Constitution.

## B.  Retaliation

Boudreaux contends that Corporal Williams retaliated against him in violation of his constitutional rights by transferring him from cell block 2-A to cell block 2-H on October 17, 2014, because of Boudreaux's failure to provide information about a fight between two other inmates.[16] Williams denies taking any action to retaliate against Boudreaux and notes that he had no involvement in the decision to transfer Boudreaux from cell block 2-A to another cell block.[17] Williams provides records confirming that the decision to move Boudreaux from the 2-A cell block to the 2-H cell block was

---

[16]Correction of Statement of Facts, Docket Entry No. 16, p. 1.

[17]Williams Affidavit, Exhibit B to MSJ, Docket Entry No. 19-2, pp. 3-4.

made by Deputy D. Hedrick of the Classification and Release Unit at the Jail.[18] Williams adds that, without "extensive documentation and support," he had no authority to override decisions made by the Classification and Release Unit and that he had "no reason or desire to select the location of any housing" for Boudreaux on this occasion.[19]

"To prevail on a claim of retaliation, a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." McDonald v. Steward, 132 F.3d 225, 231 (5th Cir. 1998); see also Morris v. Powell, 449 F.3d 682, 684 (5th Cir. 2006). A prisoner must allege more than his personal belief that he is the victim of retaliation. See Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997). Mere conclusory allegations of retaliation will not be enough to withstand a properly supported motion for summary judgment. See Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995).

Boudreaux has not filed a response to the motion for summary judgment and he does not refute the evidence showing that Williams had no involvement in the decision to transfer Boudreaux to the 2-H cell block. Boudreaux's conclusory allegations of retaliation are

---

[18]Pokluda Affidavit, Exhibit A to MSJ, Docket Entry No. 19-1, p.3; Classification Record, Exhibit 1 to Pokluda Affidavit, Docket Entry No. 19-1, p. 12.

[19]Williams Affidavit, Exhibit B to MSJ, Docket Entry No. 19-2, p. 4.

not sufficient to raise a genuine issue of material fact. See Woods, 60 F.3d at 1166. Absent a showing that Corporal Williams had any involvement in the decision to transfer Boudreaux to the 2-H cell block, Boudreaux fails to make a claim of retaliation or to demonstrate a constitutional violation. Accordingly, Corporal Williams is entitled to qualified immunity.

## C. Failure to Protect

Boudreaux contends that Deputy Leal failed to protect him from harm when he was assaulted on November 5, 2014, because Leal left the door to his cell open and left his post for an extended time.[20]

Pretrial detainees have a constitutional right under the Due Process Clause to protection from harm during their confinement. See Brumfield v. Hollins, 551 F.3d 322, 327 (5th Cir. 2008) (citing Hare v. City of Corinth, Mississippi, 74 F.3d 633, 650 (5th Cir. 1996) (en banc)). The duty to protect pretrial detainees from harm under the Due Process Clause is the same as the one afforded under the Eighth Amendment. See Hare, 74 F.3d at 650 ("[T]he State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including . . . protection from harm, during their confinement. . ."). Because the Complaint against Leal concerns an isolated episode, Boudreaux "is required to prove intent —

---

[20]More Definite Statement, Docket Entry No. 10, p. 1.

specifically, that one or more jail officials 'acted or failed to act with deliberate indifference to [his] needs.'" Shepherd v. Dallas County, 591 F.3d 445, 452 (5th Cir. 2009) (quoting Hare, 74 F.3d at 648).

The deliberate indifference standard is an "extremely high" one to meet. Domino v. Texas Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001). Mere negligent failure to protect an inmate from attack does not justify liability under § 1983. See Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995). An official acts with deliberate indifference "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 114 S. Ct. 1970, 1984 (1994).

Deputy Leal acknowledges that he was assigned to work in the "Pickett" and provide supervision for the cell block where Boudreaux was assigned on November 5, 2014.[21] On the evening of November 5 Leal conducted regular security checks by periodically leaving the Pickett and walking through the "Pod" or cell block.[22] Leal states that each inspection took no more than five minutes and that he did not leave the Pickett for any longer period of time.[23] Likewise, Leal did not observe any behavior among the inmates that

---

[21]Leal Affidavit, Exhibit C to MSJ, Docket Entry No. 19-3, p. 3.

[22]Id. at 4.

[23]Id.

indicated a problem.[24] When Leal returned to the Pickett at one point, Boudreaux advised Leal that he had been assaulted.[25] Leal immediately called for assistance and numerous staff responded.[26] Prior to the incident Leal was not aware of any problems between any of the inmates housed in either of the Pods adjacent to the Pickett where he was assigned.[27]

Boudreaux does not allege or show that Leal knew of but disregarded a serious risk to his health or safety on the night he was attacked in cell block 2-H. In fact, Boudreaux concedes that he had "no problems" with his assailants before the assault occurred and that he had "absolutely no idea that [the attack] would happen."[28] Based on this record, Boudreaux does not establish that Leal was subjectively aware of an excessive risk of harm but deliberately indifferent to that risk. Because Boudreaux does not demonstrate a constitutional violation on Deputy Leal's part, Leal is entitled to qualified immunity.

D. **Official Capacity Claims**

Boudreaux does not indicate whether he sues the defendants in their individual capacities only or if he also sues them in their

---

[24]Id.

[25]Id. at 5.

[26]Id.

[27]Id.

[28]More Definite Statement, Docket Entry No. 10, pp. 3-4.

-11-

official capacities as Fort Bend County employees. Defendants argue that they are also entitled to summary judgment on any claim against them in their official capacity as Fort Bend County employees because Boudreaux does not allege or show that an official policy or custom caused any of the alleged constitutional violations in this case.[29]

Assuming that a constitutional violation has occurred, a municipality such as Fort Bend County is only liable under § 1983 for acts that are "directly attributable to it 'through some official action or imprimatur.'" James v. Harris County, 577 F.3d 612, 617 (5th Cir. 2009) (quoting Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001)). For liability to attach "the municipality must cause the constitutional tort, which occurs 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" Bolton v. City of Dallas, Texas, 541 F.3d 545, 548 (5th Cir. 2008) (quoting Monell v. Dep't of Social Services of City of New York, 98 S. Ct. 2018, 2037-38 (1978)).

For reasons set forth above, Boudreaux has not demonstrated that a constitutional violation occurred in this case. He does not otherwise attempt to establish that he was harmed as the result of

---

[29]MSJ, Docket Entry No. 19, p. 15.

any deficient policy or custom of the Fort Bend County Sheriff's Department. Accordingly, the defendants cannot be held liable in their official capacities and they are entitled to summary judgment on this issue.

E.  **Remaining Defendants**

In addition to the claims against Corporal Williams and Deputy Leal, the Complaint lists Fort Bend County Sheriff Troy E. Nehls, Lieutenant J. Cardenas, and Sergeant D. Marin as defendants.[30] The court did not request an answer from these defendants because Boudreaux has not alleged facts showing that these defendants had any personal involvement with a constitutional violation. Personal involvement is an essential element of a civil rights cause of action. See Murphy v. Kellar, 950 F.2d 290, 292 (5th Cir. 1992). Because Boudreaux has not specified any personal involvement on the part of Sheriff Nehls, Lieutenant Cardenas, or Sergeant Marin, the Complaint against these defendants is dismissed for failure to state a claim.

IV.  **Conclusion and Order**

Accordingly, Defendants' Motion for Summary Judgment (Docket Entry No. 19) is **GRANTED**, and this action will be dismissed with prejudice.

---

[30]Complaint, Docket Entry No. 1, pp. 1, 3.

The Clerk shall provide a copy of this Memorandum Opinion and Order to the parties.

**SIGNED** at Houston, Texas, on this 27th day of January, 2016.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE